UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
ATILIO ARELO,
                                                            :
                    Plaintiff,
                                                            :
            -against-                                              07-CV-6906 (LAK)
                                                            :
BLOOMBERG L.P.; THOMAS BOEKAMP,
HANK KELBAUGH, and BENNY TRAMO,            :
individually, and in their official capacities as
employees of Bloomberg L.P.,                          :

                    Defendants.                     :

------------------------------------------------------------x

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS'**
**MOTIONS TO DISMISS CERTAIN CAUSES OF ACTION**
**IN THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ......................................................................................... 1

ARELO'S FACTUAL ALLEGATIONS .......................................................................... 3

PROCEDURAL HISTORY ................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.   FEDERAL LAW OBLIGATES ARELO TO AMPLIFY THE COMPLAINT'S LEGAL
     CONCLUSION WITH FACTS DEMONSTRATING MORE THAT A THEORETICAL
     RIGHT TO RELIEF. ................................................................................................. 7

II.  ARELO'S ADA CLAIMS SHOULD BE DISMISSED BECAUSE HIS COMPLAINT
     REVEALS THAT HE WAS NEITHER "DISABLED" NOR REGARDED AS SUCH BY
     BLOOMBERG ........................................................................................................... 8

     A.  Arelo's Complaint Shows that he Is Not Disabled Within The Meaning of The ADA
         Because His Health Condition Did Not Substantially Impact a Major Life Activity. ......... 8

         1.  The Ability to "Move Around Comfortably" ................................................. 9

         2.  The Ability to Interact With Others In "Stressful Situations" ...................... 10

         3.  Dietary Restrictions ...................................................................................... 11

         4.  The Ability to Work Under "Stressful Conditions" ...................................... 11

     B.  Arelo's Amended Complaint Shows That Bloomberg Did Not Regard Him As
         Disabled. ....................................................................................................... 12

III. ARELO'S DISPARATE TREATMENT AND RETALIATION CLAIMS SHOULD BE
     DISMISSED  BECAUSE THERE ARE NO FACTUAL ALLEGATIONS TO SUGGEST
     THAT ANY DEFENDANT WAS MOTIVATED BY DISCRIMINATORY OR
     RETALIATORY BIASES. ....................................................................................... 13

IV.  THE NJLAD CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SUFFER FROM
     ADDITIONAL INFIRMITIES ............................................................................... 15

     A.  Kelbaugh ....................................................................................................... 16

     B.  Tramo ............................................................................................................ 16

     C.  Boekamp ....................................................................................................... 17

CONCLUSION .................................................................................................................. 18

## Table of Authorities

**Cases**                                                                                    **Page(s)**

ATSI Commc'n, Inc. v. Shaar Fund Ltd.,
    49 F.3d 87 (2d Cir. 2007)...................................................................................7

Batac v. Pavarini Constr. Co.,
No. 03-CV-9783(PAC), 2005 WL. 2838600 (S.D.N.Y. 2005) ......................................11

Bell Atlantic v. Twombly,
    127 S. Ct. 1955 (2007)............................................................................3, 7, 14

Cecere v. R.J. Reynolds Tobacco Co.,
    No. 98-CV-2011, 1998 WL. 665334 (S.D.N.Y. Sept. 28, 1998) ................................3

Colwell v. Suffolk County Police Dep't,
    158 F.3d 635 (2d Cir. 1998)....................................................................13

Conley v. Gibson,
    355 U.S. 41, 78 S. Ct. 99 (1957)..............................................................7

Crawford v. New York Life Ins. Co.,
    No. 04-CV-1853, 2006 WL. 2792779 (E.D.N.Y. Sept. 27, 2006) .............................10, 11, 12

Davie v. New York City Transit Auth.,
    No. 02-CR-4231(FB)(LB) 2003 WL 1856431 (E.D.N.Y. Apr. 9, 2003) ..................................8

Dean v.  Westchester County,
    309 F. Supp. 2d 587 (S.D.N.Y. 2004)........................................................7, 8, 12, 13

Duncan v. AT&T Commc'ns, Inc.,
    668 F. Supp. 232 (S.D.N.Y. 1987) ............................................................3

Epstein v. Kalvin-Miller Int'l, Inc.,
    100 F. Supp. 2d 222 (S.D.N.Y. 2000).........................................................10

Espinoza v. Farah Mfg. Co.,
    414 U.S. 86, 94 S. Ct. 334 (1973)...........................................................15

Failla v. City of Passaic,
    146 F.3d 149 (3d Cir. 1998)..................................................................15

Gaul v. AT&T, Inc.,
    955 F. Supp. 346 (D.N.J. 1997), aff'd Gaul v. Lucent Techs., Inc., 134 F.3d 576 (3d
    Cir. 1998) ...................................................................................11, 12

Harrison v. Harlem Hosp.,
    No. 05-CV-8271(WHP), 2007 WL 2822231 (S.D.N.Y. Sept. 28, 2007) ..............................14

Herman v. Coastal Corp.,
    791 A.2d 238 (N.J. Super. Ct. App. Div. 2002)........................................................................15

Herschaft v. New York Bd. of Elections,
    No. 00-CV-2748(CBA), 2001 WL 940923 (E.D.N.Y. Aug. 13, 2001)...............................11

Hurley v. Atlantic City Police Dep't,
    174 F.3d 95 (3d Cir. 1999).....................................................................................................15

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)......................................................................................................7

Jacques v. DiMarzio,
    386 F.3d 192 (2d Cir. 2004)....................................................................................................10

Jones v. Consumer Info. Dispute Resolution,
    No. 06-CV-1809(LAP), 2007 WL 2398811 (S.D.N.Y. Aug. 16, 2007)................................14

Jones v. Jersey City Med. Cntr.,
    20 F. Supp.2d 770 (D.N.J 1998) ...........................................................................................15

Krouse v. Am. Sterilizer Co.,
    126 F.3d 494 (3d Cir. 1997).....................................................................................................8

Langford v. County of Cook,
    965 F. Supp. 1091 (N.D. Ill. 1997) ....................................................................................8, 12

Lauture v. Int'l Bus. Mach. Corp.,
    216 F.3d 258 (2d Cir. 2000)......................................................................................................3

Mitchell v. Girl Scouts of the U.S.A.,
    No. 98-CV-3730(GBD), 2003 WL 22705121 (S.D.N.Y. Nov. 17, 2003)................................9

Moscowitz v. Brown,
    850 F. Supp. 1185 (S.D.N.Y. 1994)..........................................................................................3

Peter v. Lincoln Technical Inst.,
    255 F. Supp. 2d 417 (E.D. Pa. 2002) .....................................................................................10

Reyes v. City University of New York,
    No. 06-CV-3639(CM), 2007 WL 2186961 (S.D.N.Y. July 26, 2007) ...................................14

Steele v. Thiokol Corp.,
    241 F.3d 1248 (10th Cir. 2001) ...............................................................10

Tarr v. Ciasulli,
    853 A.2d 921, 929 (N.J. 2004)................................................................15

Thomas v. Farley,
    31 F.3d 557 (7th Cir. 1994) ......................................................................8

Toyota Motor Mfg. v. Williams,
    534 U.S. 184, 122 S. Ct. 681 (2002) ........................................................9

Weiler v. Household Fin. Corp.,
    101 F.3d 519 (7th Cir. 1996) ..................................................................12

Witter v. Delta Airlines, Inc.,
    966 F. Supp. 1193 (N.D. Ga. 1997), aff'd 138 F.3d 1366 (11th Cir. 1998)..............................11

Yusuf v. Vassar College,
    35 F.3d 709 (2d Cir. 1994).........................................................................8

**Statutes**

29 U.S.C. § 621 .................................................................................................2

42 U.S.C. § 2000 ...............................................................................................2

42 U.S.C. § 12101 .........................................................................................2, 8

N.J. STAT. ANN. § 10:5-12 (West 2004) ......................................................2, 15

**Other Authorities**

FED. R. CIV. P. 8(a)(2)........................................................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                 :

ATILIO ARELO,
                                 :

              Plaintiff,
                                 :

        -against-                    :        07-CV-6906 (LAK)

                                 :

BLOOMBERG L.P.; THOMAS BOEKAMP,
HANK KELBAUGH, and BENNY TRAMO,    :
individually. and in their official capacities as
employees of Bloomberg L.P.,          :

              Defendants.     :

-------------------------------------------------------------x

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS'
## MOTIONS TO DISMISS CERTAIN CAUSES OF ACTION
## IN THE AMENDED COMPLAINT

        Defendant Bloomberg L.P. ("Bloomberg") and defendants Thomas Boekamp,

Hank Kelbaugh, and Benny Tramo (the "Individual Defendants" and, together with Bloomberg,

the "Defendants") collectively submit this memorandum of law in support of Defendants'

motions, pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss

Counts 1 through 10 and 12 through 14 of the Amended Complaint.

### PRELIMINARY STATEMENT

        Plaintiff Atilio Arelo ("Arelo") has brought this employment discrimination

action without any factual allegations to support his conclusion that the employment actions of

which he complains were motivated by his membership in various protected classes or his having

engaged in protected speech.  What is more, the factual allegations he does make belie various of

his claims.

Arelo is a fifty-nine year old Latin American man with a heart condition that causes him discomfort and difficulties in "stressful" situations. Based on those characteristics and his dissatisfaction with his employment at Bloomberg's Princeton, New Jersey office, he sues not only Bloomberg but also three individuals who work there: Thomas Boekamp and Hank Kelbaugh, each of whom is a manager with some responsibility for the group in which Arelo worked, and Benny Tramo, who is a Human Resources representative. Arelo claims that Bloomberg violated federal and New Jersey state law by discriminating against him based on his age, national original and supposed disability, by failing to accommodate his disability, and by retaliating against him for complaining of discrimination.[1] He also alleges that the Individual Defendants aided and abetted the NJLAD violations. Finally, he also asserts causes of action for battery and the intentional infliction of severe emotional distress.

As discussed below, Arelo's discrimination and retaliation claims should be dismissed. First, Arelo's description of his physical impairments reveals that they do not substantially limit a major life activity and therefore do not constitute a "disability" under the Americans with Disabilities Act. For that reason, Counts 1 and 2 (disparate treatment and failure to accommodate a disability under the ADA, respectively) should be dismissed.

Second, Arelo fails to assert any facts even remotely supporting his conclusory allegations that Bloomberg subjected him to disparate treatment due to his age, his national origin, or his supposed disability, or that it retaliated against him for having complained of

---

[1]   Those claims are brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA"); and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 (the "NJLAD"). Arelo also asserts causes of action for battery and for the intentional infliction of emotional harm, but those two claims are not implicated by this motion.

discrimination.  If Arelo's allegations suffice, then any dissatisfied employee could hale his

employer and co-workers into Court -- and impose on them the substantial expense and

distraction of pre-trial discovery -- by doing nothing more than stating the conclusion that

employment decisions were motivated by illegitimate considerations.  The U.S. Supreme Court,

in its decision in <u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1955 (2007), has instructed that Rule 8

requires more.  This provides not only an independent reason for dismissing the first two causes

of action of the Amended Complaint, but also for dismissing Counts 5, 7, 8, 10, 12, and 13,

which purport to allege disparate treatment based on age, national origin, and disability under the

ADEA, Title VII, and the NJLAD, and Counts 3, 4, 6, 9 and 14, which purport to allege

retaliation under those same statutes.

ARELO'S FACTUAL ALLEGATIONS

Despite the Defendants' vehement disagreement with many of the allegations in

the Amended Complaint, its well-pleaded allegations are accepted as true for the purposes of this

motion.[2]  Arelo's allegations are summarized below.

Bloomberg hired Arelo in 2001, when he was 53 years old, to work as a

Portuguese translator.  (Am. Compl. ¶ 14.)  Arelo characterizes himself as a highly proficient

employee whose evaluations for the first two years of his employment were "uniformly

positive."  (<u>Id.</u> ¶ 16.)  During that period Arelo missed work occasionally to receive treatment for

a heart condition, "but always made up the time that he missed from work by putting in extra

---

[2]    Not all of the Complaint's factual allegations, however, should be accepted as true:  "Baldly
conclusory statements," "groundless" allegations and "unsupported conclusions[s]" are
"meaningless as a practical matter and, as a matter of law, insufficient to state a claim."
<u>Cecere v. R.J. Reynolds Tobacco Co.</u>, No. 98-CV-2011, 1998 WL 665334, at *6-7 (S.D.N.Y.
Sept. 28, 1998) (quoting <u>Moscowitz v. Brown</u>, 850 F. Supp. 1185, 1190 (S.D.N.Y. 1994),
<u>abrogated on other grounds</u>, <u>Lauture v. Int'l Bus. Mach. Corp.</u>, 216 F.3d 258 (2d Cir. 2000));
<u>Duncan v. AT&T Commc'ns, Inc.</u>, 668 F. Supp. 232, 234 (S.D.N.Y. 1987).

hours." (Id. ¶ 17.)  Arelo's health condition impacts his ability to work and interact with others in stressful situations, his ability to move around comfortably, and his diet.  (Id. ¶ 5.)

Arelo alleges that his positive experience at the Company changed in September 2003, when defendant Boekamp supposedly became Arelo's manager.  (Id. ¶ 18.)  According to Arelo, immediately upon stepping into his new role, Boekamp began to try to force Arelo out of the Company by manufacturing negative performance reviews and reducing his compensation. (Id. ¶¶ 18-20.)  Arelo responded by seeking to engage Boekamp in a dialogue about the criticisms and by subsequently trying unsuccessfully to "make peace" with him.  When those efforts failed, Arelo tried simply to do his job "in peace," but Boekamp's supposed hostility did not dissipate.  (Id. ¶¶ 22-23.)

Arelo further alleges that Boekamp criticized the frequency with which he took bathroom breaks, going so far as to follow him into the bathroom and peer into the particular stall Arelo was using.  Arelo also alleges that Boekamp followed him into the Company cafeteria during his lunch hour, "bump[ed] shoulders" with him, and "circl[ed]" Arelo with a "hand timer" while he ate.  (Id. ¶ 28.)  Arelo complained to Bloomberg's Human Resources department about Boekamp's supposed behavior.  (Id. ¶ 32.)

Arelo further alleges that in October 2005, he was given additional duties that "required [him] to perform computerized balance sheet functions for Bloomberg's operations." Arelo, who is "technologically and mathematically challenged," was offered training for these additional duties, but the training schedule was "tight" and would include "rigorous examinations and after-hours course work."  (Id. ¶ 33.)  The prospect of taking on these duties proved too upsetting for Arelo, who began experiencing "severe, stress-related fluctuations in his blood pressure," and he procured a doctor's note excusing him from the assignment.  As a result,

Bloomberg relieved him of the "accounting duties," and instead gave him additional translation work.  (Id. ¶ 34.)

In January 2006, Arelo received another negative performance review, and he was not given a "standard raise" available to "similarly-situated, younger, non-disabled, white employees."  (Id. ¶ 37.)  Arelo again complained to Human Resources, this time alleging that he was the victim of discrimination based on his age, disability and national origin.  (Id. ¶ 38.)

According to Arelo, in January 2006 he took a partial vacation day to attend a funeral.  Despite having given Arelo permission to take the time off, on the day of the funeral Boekamp directed Arelo's team leader to call Arelo's home and inquire as to his whereabouts. The team leader spoke with Arelo's wife and told her that Arelo's absence was unexcused and jeopardized his employment, greatly upsetting Arelo's wife.  (Id. ¶¶ 39-41.)

Arelo further complains that over the next several months, unidentified supervisors unfairly criticized his work, including by requesting him to make grammatically-incorrect changes to his translations.  (Id. ¶ 44.)

In November 2006, Arelo was given a letter of reprimand for deficient performance.  (Id. ¶ 47.)  Receiving such a letter caused Arelo such stress that he supposedly "collapsed" and was "rushed to a nearby hospital."  (Id.)  According to Arelo, defendant Kelbaugh (whom Arelo identities as Boekamp's manager) then got in his own car and followed the ambulance to the hospital, but failed to keep a "safe distance" which required the ambulance driver to turn off the emergency lights and proceed at a slower pace.  (Id. ¶ 48.)  Arelo further alleges that, while he was at the hospital, Kelbaugh and Tramo "snuck" into the emergency room, where they claimed to be Arelo's friends.  While in the emergency room, Kelbaugh and

Tramo somehow intercepted a call "to the hospital" by Arelo's wife, to whom they gave the false assurance that Arelo was "fine." (Id. ¶ 50.)

Arelo commenced short-term disability leave that day, and never resumed working. He alleges that four and one-half months after his leave began, Tramo terminated his medical benefits. (Id. ¶ 56.) He also alleges that he was ordered to return to work when his short-term disability leave expired in July 2007, but that his former position was no longer available to him, and that he had been removed from Bloomberg's payroll. He also alleges that Tramo gave him conflicting explanations for why his former position was no longer available. (Id. ¶¶ 54-56.) Absent from the Amended Complaint is any allegation that Arelo ever indicated a willingness to return to work in a different position.

<u>PROCEDURAL HISTORY</u>

Arelo commenced this action in August 2007, asserting claims under federal and New Jersey state law against all of the Defendants and against a fourth Bloomberg employee who is not named in the Amended Complaint. On October 9, 2007, before any of the Defendants responded to the original Complaint, Arelo filed the Amended Complaint, in which he dropped the federal claims against the individual defendants, dropped a time-barred "false imprisonment claim," which was based on Boekamp's supposedly peering into bathroom stalls, and added details regarding his supposed disability.

<u>ARGUMENT</u>

I.

## FEDERAL LAW OBLIGATES ARELO TO AMPLIFY THE COMPLAINT'S LEGAL CONCLUSION WITH FACTS <u>DEMONSTRATING MORE THAN A THEORETICAL RIGHT TO RELIEF</u>.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to set forth "a short and plain statement of the claim <u>showing that the pleader is entitled to relief</u>." FED. R. CIV. P. 8(a)(2) (emphasis added). To withstand a motion to dismiss, the complaint must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007). Rather, the factual allegations must be enough to raise a right to relief above the speculative level. <u>Id.</u>[3]

While <u>Bell Atlantic</u> involved an antitrust claim, the Second Circuit subsequently held that the pleading standard it announced was not limited to such cases. <u>ATSI Commc'n, Inc. v. Shaar Fund Ltd.</u>, 49 F.3d 87, 98, n.2 (2d Cir. 2007). Rather, <u>Bell Atlantic</u> imposed in all cases a "flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007).

Indeed, even before <u>Bell Atlantic</u>, Courts recognized that "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." <u>Dean v.</u>

---

[3]      In <u>Bell Atlantic</u>, the court addressed the oft-cited statement in <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The <u>Bell Atlantic</u> Court said "[T]his famous observation has earned its retirement" and should be "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." 127 S.Ct. at 1969.

<u>Westchester County</u>, 309 F. Supp. 2d 587 (S.D.N.Y. 2004) (quoting <u>Yusuf v. Vassar College</u>, 35 F.3d 709, 713 (2d Cir. 1994)). In addition, where the plaintiff alleges particular facts that "show she has no claim, then she has pleaded herself out of court." <u>Langford v. County of Cook</u>, 965 F. Supp. 1091, 1095-96 (N.D. Ill. 1997) (quoting <u>Thomas v. Farley</u>, 31 F.3d 557, 558 (7th Cir. 1994)).

As discussed next, Arelo's claims fail to meet these pleading standards.

II.

ARELO'S ADA CLAIMS SHOULD BE DISMISSED
BECAUSE HIS COMPLAINT REVEALS THAT HE WAS
<u>NEITHER "DISABLED" NOR REGARDED AS SUCH BY BLOOMBERG</u>

Arelo alleges that he is, or is regarded as, "disabled" within the meaning of the ADA, that as a result he was subjected to disparate treatment, and that he was denied reasonable accommodations in violation of the ADA.[4]

To assert a claim under the ADA, Arelo must show either (1) that he had a "disability," which the statute defines as a physical or mental impairment that "substantially limits one or more major life activities," or (2) that Bloomberg perceived him as having such an impairment. 42 U.S.C. § 12102(2).[5] Failure adequately to plead a disability is grounds for dismissal of the complaint. <u>See Davie v. New York City Transit Auth.</u>, No. 02-CR-4231(FB)(LB), 2003 WL 1856431 (E.D.N.Y. Apr. 9, 2003).

A.   Arelo's Complaint Shows that he Is Not Disabled Within The Meaning of The
     ADA Because His Health Condition Did Not Substantially Impact a Major
     Life Activity.

Arelo's description of his alleged disability is specific and plainly deficient:

_____

[4]   <u>See</u> Counts 1 and 2.

[5]   This test does not apply to Arelo's retaliation claims under the ADA. <u>See Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494 (3d Cir. 1997). It also does not apply to his disability claim under the NJLAD.

> Arelo [suffers from] a severe disease, specifically, Coronary Artery
> Disease ("CAD"), severe high blood pressure, and Arterial
> Sclerosis.  Because Arelo's condition causes internal bleeding and
> affects his ability to move around comfortably, his ability to
> interact with others in a stressful situation, his diet, and his ability
> to work under stressful conditions, Arelo's condition is a physical
> impairment that substantially limits one or more major life
> activities.  As such, Arelo qualifies as an individual with a
> disability within the meaning of the ADA, in that he is a person
> regarded as having, or with a history of having, such an
> impairment.

(Am. Compl. ¶ 5.)  Thus, Arelo identifies four activities that are impacted by his condition:  (1)

his ability to move around comfortably, (2) his ability to interact with others in stressful

situations, (3) his diet, and (4) his ability to work under stressful conditions.  For those

impairments to render Arelo "disabled" in the context of the ADA, the activities must be "major

life activities," and they must be "substantially impacted."

      The Supreme Court has explained that the term "substantial" must be "interpreted

strictly to create a demanding standard for qualifying as disabled."  Toyota Motor Mfg. v.

Williams, 534 U.S. 184, 122 S.Ct. 681 (2002).  More specifically, for major life activities to be

"substantially" limited, the impairments must cause more than minor interference, and must also

be permanent or, at the very least, long-term.  Id.  While walking, interacting with others, eating

and working may be "major life activities," Arelo's allegations show that none have been

"substantially limited."

      1.    The Ability to "Move Around Comfortably"

      Defendants do not dispute that walking is a major life activity.  But for that

activity to be "substantially limited," Arelo would have to be virtually unable to walk.  See

Mitchell v. Girl Scouts of the U.S.A., No. 98-CV-3730(GBD), 2003 WL 22705121 (S.D.N.Y.

Nov. 17, 2003) ("plaintiff does not contend that she is unable to walk, but rather she is unable to

do a substantial amount of walking.  Such a condition, while of course to an extent is limiting,

does not rise to the level of a substantial limitation"); Epstein v. Kalvin-Miller Int'l, Inc., 100 F. Supp. 2d 222, 226 (S.D.N.Y. 2000) (to succeed on ADA claim, plaintiff must prove that his ability to walk is impaired "to such a great extent that he is 'unable' to walk, or is 'significantly restricted' in his ability to walk, as compared to the average person."); Steele v. Thiokol Corp., 241 F.3d 1248 (10th Cir. 2001) (ability to walk not substantially limited where plaintiff "is still capable physically and psychologically of walking."). Arelo's Amended Complaint, by contrast, merely states that his health condition "affects" his ability to move around "comfortably." This falls far short of the mark.

     2.    The Ability to Interact With Others In "Stressful Situations"

Arelo fares no better with his allegation that his condition impacts his ability to interact with others in "stressful situations." The Second Circuit has held that where the impairment concerns the ability to communicate with others, it must "severely limit[ ] the plaintiff's ability to connect with others, i.e., to initiate contact with other people and respond to them, or to go among other people -- at the most basic level of these activities." Jacques v. DiMarzio, 386 F.3d 192, 203 (2d Cir. 2004); see also Peter v. Lincoln Technical Inst., 255 F. Supp. 2d 417 (E.D. Pa. 2002) ("The activity of interacting with others is substantially limited only where an individual's socialization is characterized on a regular basis by severe problems such as high levels of hostility, social withdrawal, or failure to communicate when necessary."). Here, Arelo's Amended Complaint reveals that he had no such impairment; for example, he alleges that he was proficient at his job, that he initiated communications with his supervisors when he disagreed with their criticism of his work, and that he presented complaints to the Company's Human Resources department when he believed he was being treated unfairly. These allegations belie any suggestion that Arelo's ability to interact with others was so severely impacted as to render him "disabled." See Crawford v. New York Life Ins. Co., No. 04-CV-

1853, 2006 WL 2792779 (E.D.N.Y. Sept. 27, 2006) (ability to communicate with others not "substantially impacted" where plaintiff "was able to communicate with her superiors and co-workers effectively enough to complete her work."); see also Herschaft v. New York Bd. of Elections, No. 00-CV-2748(CBA), 2001 WL 940923 (E.D.N.Y. Aug. 13, 2001) (plaintiff could not establish a "disability" on the basis of his difficulty interacting with others where "the record reflects that he was able to attend school, and to work as a librarian, without problems.")

3.     Dietary Restrictions

Arelo also alleges that his condition "affected" his diet, although he does not explain the manner in which it did so. To be sure, eating would seem to qualify under any notion of a "major life activity," but for dietary restrictions to constitute a disability, Arelo would have to show that they "substantially limited" his ability to eat. See Batac v. Pavarini Constr. Co., No. 03-CV-9783(PAC), 2005 WL 2838600 (S.D.N.Y. 2005). Nothing in the Amended Complaint suggests such a limitation. To the contrary, the Amended Complaint suggests that Arelo regularly ate lunch in the Company's cafeteria. (See Am. Compl. ¶ 28.) Consequently, Arelo's unspecified dietary restrictions fail to rise to the level of a "disability" under the ADA.

4.     The Ability to Work Under "Stressful Conditions"

Arelo also claims that his is "disabled" within the meaning of the ADA because his condition impacts his ability to work under "stressful conditions." Various courts have held that such an impairment does not constitute a "disability" under the ADA. See Gaul v. AT&T, Inc., 955 F. Supp. 346 (D.N.J. 1997), aff'd Gaul v. Lucent Techs., Inc., 134 F.3d 576 (3d Cir. 1998) (impairment that "significantly restricts [plaintiff's] ability to perform jobs which are unduly stressful" not a "disability" because the condition does not "render the plaintiff substantially limited in the major life activity of working."); Witter v. Delta Airlines, Inc., 966 F. Supp. 1193 (N.D. Ga. 1997), aff'd 138 F.3d 1366 (11th Cir. 1998) ("Plaintiff's psychological

condition does not appear to be exceptionally severe as it only appears to be a serious condition when Plaintiff is under stress or pressure."). Rather, limitations on Arelo's ability to work would constitute a "disability" only if they significantly restricted Arelo's ability to perform either a class of jobs or a broad range of jobs . . ." Dean v. Westchester County, 309 F. Supp. 2d 587 (S.D.N.Y. 2004). As the Court stated in Gaul v. AT&T, "clearly, 'unduly stressful' jobs do not constitute a recognized occupational classification." Gaul v. AT&T, 955 F. Supp. at 351.

In addition, Arelo's suggestions, if they are to be believed, suggest that his difficulties were limited to his interactions with Mr. Boekamp. Similar allegations were made, and found deficient, in Langford v. County of Cook, 965 F. Supp. 1091 (N.D. Ill. 1997). In that case, plaintiffs alleged that "they suffer from a stress-related disability that limits their ability to work under a specific supervisor." In granting defendants' motion to dismiss, the Court held that the "major life activity of working is not 'substantially limited' if a plaintiff cannot merely work under a certain supervisor because of anxiety and stress." 965 F. Supp. at 1096, quoting Weiler v. Household Fin. Corp., 101 F.3d 519, 524 (7th Cir. 1996).

B.    Arelo's Amended Complaint Shows That Bloomberg Did Not Regard Him As Disabled.

Arelo's Amended Complaint includes the conclusory allegation that "he is a person regarded as having, or with a history of having, such an impairment." (Am. Compl. ¶ 5.) For Arelo to proceed under this prong, "[i]t is not enough . . . that the employer regarded [plaintiff] as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." Crawford, 2006 WL 2792779, at *7 (quoting Colwell v. Suffolk County Police Dep't., 158 F.3d 635, 646 (2d Cir. 1998)).

The Amended Complaint reveals that Bloomberg did not regard Arelo as disabled within the meaning of the ADA. To the contrary, Arelo alleges that Bloomberg gave him a

broad range of duties, subjected him to frequent criticisms, and requested he return to work upon the expiration of his short term disability leave.

The fact that Bloomberg excused Arelo from taking on specific additional duties based on his doctor's note does not suggest that Bloomberg considered him disabled, since an ADA disability requires that the employee be precluded from performing a broad range of jobs, and not a particular job. Dean, 309 F. Supp. 2d 587. Similarly, Arelo's taking a seven month medical leave does not suggest that Bloomberg would have considered him disabled, given that Bloomberg requested that he return to work upon the expiration of that leave. See Colwell, 158 F.3d at 646 (temporary impairment of seven months not "substantially limiting").

III.

**ARELO'S DISPARATE TREATMENT AND RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE THERE ARE NO FACTUAL ALLEGATIONS TO SUGGEST THAT ANY DEFENDANT WAS MOTIVATED BY DISCRIMINATORY OR RETALIATORY BIASES.**

Arelo asserts throughout his brief that Bloomberg subjected him to disparate treatment due to his national origin, his age and his status as a disabled person. Indeed, Arelo's allegations suggest that it was a combination of one or more of those attributes that led to the disparate treatment. (See Am. Compl. ¶ 18 (Bloomberg's conduct was due to its "disdain and contempt for older workers who require medical treatment"); Id. ¶ 26 (comparing Arelo's treatment to that of "other non-disabled, younger employees"); Id. ¶ 37 (Arelo denied a raise given to "younger, non-disabled, white employees")). Arelo also alleges that Bloomberg retaliated against him for having complained of discrimination. But beyond these conclusory, kitchen-sink style allegations, Arelo offers no facts to suggest that any of the acts of which he complains were motivated by discriminatory or retaliatory biases. To the contrary, his lumping together the various protected classes in which he claims membership reveals the absence of any coherent theory by which Defendants' actions should be seen as discriminatory.

As noted above, earlier this year the Supreme Court instructed that to withstand a motion to dismiss, the complaint must set forth more than "labels and conclusions, and [a] formulaic recitation of the elements of a cause of action," and must instead contain sufficient factual allegations to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007). Because Arelo fails to provide any specific allegations to support his conclusions that he was subjected to disparate treatment or retaliated against, those claims should be dismissed.[6] See Harrison v. Harlem Hosp., No. 05-CV-8271(WHP), 2007 WL 2822231, at *4 (S.D.N.Y. Sept. 28, 2007) (discrimination claim dismissed where "[P]laintiffs assert that Defendants discriminated against them because they are African-American, [but] they do not allege a single fact to support their claims."); Jones v. Consumer Info. Dispute Resolution, No. 06-CV-1809(LAP), 2007 WL 2398811 (S.D.N.Y. Aug. 16, 2007) (Title VII claim dismissed where complaint contained no allegations supporting inference of discrimination); Reyes v. City University of New York, No. 06-CV-3639(CM), 2007 WL 2186961 (S.D.N.Y. July 26, 2007) (retaliation claims dismissed where complaint did not plead facts sufficiently linking adverse employment actions to complaint of discrimination).

Arelo's "national origin" allegation reveals most glaringly this weakness. Arelo identifies himself as "Latin American," to which he refers in some places as his "ethnicity" and in other places as his "national origin." (Compare Am. Compl. ¶¶ 2 and 4.) He then conclusorily alleges that Bloomberg did not treat him the same as it did "white" employees. (See Am. Compl. ¶ 12.) But national origin and ethnicity do not refer to the same characteristics as race or color. See Espinoza v. Farah Mfg. Co., 414 U.S. 86, 94 S.Ct. 334 (1973) ("national

---

[6]     This argument does not encompass Arelo's allegations that Bloomberg failed to accommodate his disability, but as discussed in Point II above, Bloomberg contends that such claims, to the extent they are asserted under the ADA (as opposed to the NJLAD) should be dismissed because Arelo's' allegations show that he is not "disabled" within the meaning of the ADA.

origin" in Title VII context refers to country where employee or his ancestors were born).

Arelo's imprecise use of those concepts illustrates the more general absence of the plausibility

that Bell Atlantic requires.

IV.

THE NJLAD CLAIMS AGAINST THE INDIVIDUAL
DEFENDANTS SUFFER FROM ADDITIONAL INFIRMITIES

Arelo asserts claims for age, national origin, and disability discrimination, as well

as retaliation, against the Individual Defendants under the NJLAD.  Individual liability under the

NJLAD is limited to "aiding and abetting" liability.  See N.J. STAT. ANN. § 10:5-12(e) (West

2004) (making it unlawful for "any person, whether an employer or an employee or not, to aid,

abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt

to do so."  The New Jersey Supreme Court has held that in order for an employee to be held

liable as an aider or abettor, "a plaintiff must show that '(1) the party whom the defendant aids

must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of

his role as part of an overall illegal or tortious activity at the time that he provides the assistance;

[and] (3) the defendant must knowingly and substantially assist the principal violation.'" Tarr v.

Ciasulli, 853 A.2d 921, 929 (N.J. 2004) (citations omitted).  Thus, for an individual to be liable

under the NJLAD, "he must actually intend to facilitate discrimination." Jones v. Jersey City

Med. Cntr., 20 F. Supp. 2d 770 (D.N.J. 1998).

As an additional limitation, only "supervisory" employees may be held liable

under the NJLAD.  See, e.g., Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 126 (3d Cir.

1999); Failla v. City of Passaic, 146 F.3d 149, 156 n.6 (3d Cir. 1998); Herman v. Coastal Corp.,

791 A.2d 238, 253 (N.J. Super. Ct. App. Div. 2002) (holding that an individual "would have to

hold a position of supervisor" to be held individually liable).  A supervisory employee is

someone who "has the authority to hire, fire, discipline, control employees' wages or control

- 15 -

employees' schedules." Id. at 254.  As shown below, the Amended Complaint fails to state an NJLAD claim against any of the Individual Defendants.

A.  Kelbaugh

Arelo alleges that Kelbaugh is the "senior manager" to whom Arelo's manager reported.  Am. Compl. ¶ 8.  Kelbaugh's alleged wrongdoing, however, is limited to his supposedly having followed too closely the ambulance that took Arelo to the hospital in November 2006 and, while at the hospital, supposedly intercepting a call from Arelo's wife and telling her that Arelo was "fine."  There is nothing about these allegations remotely suggesting that Kelbaugh believed that Bloomberg has engaged in discriminatory conduct, that he intended to facilitate discrimination by Bloomberg in connection with his supposed trip to the hospital, or that his supposed actions in any way assisted or encouraged Bloomberg in discriminating against Arelo.  These deficiencies provide additional reasons for dismissing the NJLAD claims against Kelbaugh.

B.  Tramo

Like Kelbaugh, Tramo is alleged to have "snuck into the emergency room" to visit Arelo when he demanded to be taken to the hospital in November 2006, and to have "intercepted" the call from Arelo's wife and assured her that Arelo was fine.  Tramo is also alleged to have terminated Arelo's benefits on April 14, 2007, to have not reinstated those benefits, and to have offered Arelo in July 2007 different explanations for why Arelo's former position was no longer available to him.  The deficiencies in the allegations against Kelbaugh apply equally to those against Tramo.

Arelo's NJLAD claims against Tramo fail for the additional reason that Tramo is plainly not Arelo's supervisor.  Indeed, Arelo identifies three people whom he contends acted in

some supervisory capacity towards him:  Arelo's unidentified team leader, who reported to Boekamp (see Am. Compl. ¶ 39); Boekamp, whom Arelo identifies as his "manager" (see id. ¶ 7); and Kelbaugh, whom Arelo identifies as Boekamp's manager (see id. ¶ 8).  Tramo, by contrast, is alleged to be a "Human Resources Representative" who was "part of a collaborative decision-making body which made decisions about the terms and conditions of Arelo's employment."  Plainly, then, Tramo was not Arelo's "supervisor," which provides yet another basis for dismissing the NJLAD claim against him.

C.  Boekamp

As discussed above, Arelo alleges that Boekamp set out to force Arelo out of the Company immediately upon becoming his manager, by falsely criticizing his work, denying him raises, and generally harassing Arelo.  But as discussed in Point III above, none of these allegations suggest any discriminatory bias on Boekamp's part towards Arelo.  Thus, there is no suggestion that Boekamp believed that Bloomberg's treatment of Arelo was discriminatory, or that he intended to participate in discrimination against Bloomberg.  While Arelo may try to argue that the allegations suggest that Boekamp knowingly assisted Bloomberg in failing to accommodate Arelo's supposed disability, any such contention would be belied by Arelo's assertion that Boekamp began a campaign to "manage [Arelo] out of the Company" immediately upon becoming Arelo's manager in September 2003, well before Arelo sought any such accommodation.

CONCLUSION

For the foregoing reasons, Defendants respectfully request that Counts 1 through

10 and 12 through 14 of Plaintiffs' Amended Complaint be dismissed with prejudice.

Dated:     October 29, 2007
           New York, New York

                              WILLKIE FARR & GALLAGHER LLP

                              By: _____
                                   Thomas H. Golden (TG-1467)

                                   787 Seventh Avenue
                                   New York, New York  10019
                                   (212) 728-8000

                                   Attorneys for Defendants Bloomberg L.P., Thomas
                                   Boekamp, Hank Kelbaugh, and Benny Tramo

Of counsel:

Anna C. Aguilar
Katharine N. Monin